IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JOSE OMAR DUARTE ESCOBAR,**

     Petitioner,

     v.                                         **Civil Action No. 3:25cv758**

**PAUL PERRY,** *et al.*,

     Respondents.

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Jose Duarte Escobar's ("Petitioner")

Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"). (ECF

No. 9.)  In the Amended Petition, Mr. Duarte Escobar challenges his detention by Immigration

and Customs Enforcement ("ICE"), arguing that ICE's failure to provide Mr. Duarte Escobar

with a bond hearing under 8 U.S.C. § 1226 violates his statutory right to such a hearing and his

constitutional right to due process under the Fifth Amendment to the United States Constitution.[1]

(ECF No. 9 ¶¶ 44–60.)

The parties have filed cross-motions for summary judgment, (ECF Nos. 15, 17), and

cross-replies, (ECF Nos. 19, 20).  The matter is ripe for disposition.  For the reasons articulated

below, the Court will grant the Petition, (ECF No. 9), grant Petitioner's Motion for Summary

---

[1] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due
> process of law.

U.S. CONST. AMEND. V.

Judgment, (ECF No. 15), and deny Respondents' Motion for Summary Judgment, (ECF No. 17). The Court will order Respondents to provide Mr. Duarte Escobar with a bond hearing under 8 U.S.C. § 1226.

## I. Factual and Procedural Background

### A.   Undisputed Material Facts

Neither party disputes the material facts underlying this petition.  In 2008, Mr. Duarte Escobar entered the United States without being admitted or paroled by an immigration officer. (ECF No. 16-1 ¶ 2; ECF No. 18-1 ¶ 6.)  Mr. Duarte Escobar is currently detained at the Port Isabel detention facility in Texas, (ECF No. 16-1 ¶ 4; ECF No. 18-1 ¶ 3), by ICE officials under the mandatory detention provision of 8 U.S.C. § 1225(b)(2), (ECF No. 16, at 3[2]; ECF No. 18-1 ¶ 6).  ICE officials assert that Mr. Duarte Escobar is not entitled to a bond hearing.  (ECF No. 16, at 3 (noting that Mr. Duarte Escobar has been "without access to a bond hearing"); ECF No. 18, at 2 (referring to Mr. Duarte Escobar's "detention without a bond hearing").)

Nor do the parties differ as to other necessary facts.  Neither party disputes that Mr. Duarte Escobar is a citizen of Honduras.  (ECF No. 16-1 ¶ 1.)  In September 2008, Petitioner entered the United States "by crossing the Southern border," where he "was not apprehended by immigration officers when [he] entered." (ECF No. 16-1 ¶ 2.)  The parties agree that seventeen years later, on September 9, 2025, ICE officers apprehended Mr. Duarte Escobar in Washington,

---

[2] Mr. Duarte Escobar attached a signed affidavit to his Motion for Summary Judgment. (ECF No. 16-1.)  Mr. Duarte Escobar makes no representations regarding the legal basis for his detention in the affidavit, but Respondents assert throughout their Memorandum in Support of Summary Judgment that the legal basis for Petitioner's detention is the mandatory detention provisions of 8 U.S.C. § 1225 and that Mr. Duarte Escobar is "defined by law as an applicant for admission" under 8 U.S.C. § 1225(a)(1). (ECF No. 18, at 1).  The case proceeds on that basis.

D.C.  (ECF No. 16-1 ¶ 3.)  ICE officers "placed Petitioner in immigration custody pursuant to 8 U.S.C. § 1225(b)(2)(A)."  (ECF No. 18-1 ¶ 6.)

ICE officers "initially placed Petitioner in the Caroline Detention Facility in Bowling Green, Virginia."  (ECF No. 13-1 ¶ 6.)  On September 23, 2025, Petitioner received a Notice to Appear, "charg[ing] him with being inadmissible to the United States."  (ECF No. 18-1 ¶ 7.)  Mr. Duarte Escobar "was scheduled for an initial Master Calendar Hearing before the Annandale Immigration Court for October 6, 2025."  (ECF No. 18-1 ¶ 7.)

On September 25, 2025, ICE officers temporarily transferred Mr. Duarte Escobar "from the Caroline Detention Facility to the Alexandria Staging Facility in Alexandria, Louisiana." (ECF No. 13-1 ¶ 8.)  On September 27, 2025, ICE officers transferred Petitioner "from [the] Alexandria Staging Facility to the Port Isabel Service Processing Center in Los Fresnos, Texas." (ECF No. 13-1 ¶ 11.)  Mr. Duarte Escobar remains at the Port Isabel facility.  (ECF No. 16-1 ¶ 4.)  Mr. Duarte Escobar "is currently scheduled for an initial Master Calendar Hearing [on] October 28, 2025, with the Port Isabel Immigration Court."  (ECF No. 18-1 ¶ 9.)

**B.    Procedural Background**

On September 17, 2025, Mr. Duarte Escobar filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  (ECF No. 1.)  The Court ordered Petitioner to comply with Rule 2(c)(5) of the Rules Governing Section 2254 Cases.[3]  (ECF Nos. 3, 5.)

On September 26, 2025, Petitioner filed a Motion for a Temporary Restraining Order ("TRO Motion") in which Mr. Duarte Escobar alleged that he had been transferred out of Virginia and that he faced imminent deportation.  (ECF No. 6, at 2–3.)  Petitioner asked the

---

[3] Rule 1(b) of the Rules Governing § 2254 Cases permits this Court to apply the Rules Governing § 2254 Cases to petitions under 28 U.S.C. § 2241.  Rule 1(b), Rules Governing § 2254 Cases; *see Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007).

Court to enjoin Respondents from taking any steps toward effectuating his removal. (ECF No. 6, at 1–2.) Although the Court denied the TRO Motion on procedural grounds, (ECF No. 7), on October 7, 2025, Mr. Duarte Escobar filed the instant Amended Petition in accordance with habeas Rule 2(c)(5) and argued that the Court retained jurisdiction over the Petition despite his removal from the Eastern District of Virginia. (ECF Nos. 9, 10.) Respondents and the Court agreed that, even after Petitioner's transfer out of Virginia, the Court retained habeas jurisdiction, (ECF Nos. 13, 14), so the Court ordered the parties to file motions for summary judgment on the merits of the Petition. (ECF No. 14.)

On October 20, 2025, the parties filed cross-motions for summary judgment and memoranda in support. (ECF Nos. 15, 16, 17, 18.) On October 22, 2025, the parties filed cross-replies. (ECF Nos. 19, 20.)

### C.    <u>Legal Background</u>

Petitioner seeks a bond hearing under 8 U.S.C. § 1226, which provides immigration officials with discretion to conduct such hearings. Respondents insist that Petitioner is properly detained subject to the mandatory detention provisions of 8 U.S.C. § 1225, which does not grant detainees a bond hearing.

A robust number of federal courts across the country have suggested something to the effect that Respondents' position, stemming from a July 2025 internal ICE directive, "would upend decades of practice." *Martinez v. Hyde*, No. 25-11613, — F. Supp. 3d —, 2025 WL 2084238, at *4 (D. Mass. 2025). For decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025). But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum

explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez*, 2025 WL 2084238, at *4. The July memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter how much time passed between their entrance into the United States and their apprehension by law enforcement.

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *1 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

## II.  Standard of Review

### A.    Petitions for Writs of Habeas Corpus Under 28 U.S.C. § 2241

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B.    Summary Judgment Under Federal Rule of Civil Procedure 56

Summary judgment under Federal Rule of Civil Procedure 56[4] is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24.

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Thus, "the nonmoving party must rely on more than conclusory allegations, 'mere speculation,' the 'building of one inference upon another,' the 'mere existence of a scintilla of evidence,' or the appearance of 'some metaphysical doubt.'" *Lamar v. Ebert*, No. 2:12-cv-706 (HCM), 2018 WL 11463829, at *3 (E.D. Va. Mar. 20, 2018) (quoting *Anderson*, 477 U.S. at 252); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 688, 671 (E.D. Va. 2004)).

---

[4] Rule 56(a) provides:

> (a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

When the court is faced with cross-motions for summary judgment, as in the instant case, "the court must review each motion separately on its own merits." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

### III. Analysis

The parties seek summary judgment on the same legal issue: whether Mr. Duarte Escobar is entitled to a discretionary bond hearing under 8 U.S.C. § 1226(a)[5] or whether he is subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A).[6]

---

[5] 8 U.S.C. § 1226 provides, in relevant part:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole.

8 U.S.C. § 1226(a)(1)–(2).

[6] 8 U.S.C. § 1225 provides, in pertinent part:

(b) Inspection of applicants for admission

(2) Inspection of other aliens

(A) In general

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled

Petitioner correctly argues 8 U.S.C. § 1226 entitles him to a bond hearing.  Specifically, Mr. Duarte Escobar asserts (1) that he need not exhaust his administrative remedies before petitioning this Court, (ECF No 16, at 8); (2) that the discretionary detention provisions of 8 U.S.C. § 1226(a) entitle him to a bond hearing, (ECF No. 16, at 8–10); and (3) that his Fifth Amendment due process rights bolster his entitlement to such a hearing, (ECF No. 16, at 11–12).

Respondents insist that this Court lacks jurisdiction to hear the Petition and should deny its merits.  Specifically, Respondents aver (1) that the Court lacks jurisdiction over the Petition by virtue of two jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA"), (ECF No. 18, at 7–8); (2) that even if the Court has jurisdiction over the Petition, Mr. Duarte Escobar is properly detained subject to 8 U.S.C. § 1225's mandatory detention provisions, (ECF No. 18, at 8–20); and (3) that Mr. Duarte Escobar's due process rights have not been violated,  (ECF No. 18, at 20–28).

These arguments have been raised and decided throughout the country.  The vast majority of the numerous courts[7] addressing this issue have concluded that 8 U.S.C. § 1226(a) pertains, meaning that Mr. Duarte Escobar should receive a bond hearing.  Among them are five courts in the Eastern District of Virginia that have rejected Respondents' position on eminently sound bases.[8]  This Court does not hesitate to agree with them.

---

to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

[7] *See Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025) (collecting twenty-two cases rejecting Respondents' arguments as of October 22, 2025).

[8] *See Hasan v. Crawford*, — F. Supp. 3d. —, No. 1:25-cv-1408 (LMB), 2025 WL 2682255 (E.D. Va. 2025); *Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382 (MSN), 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *Singh v. Lyons*, No. 1:25-cv-01606 (AJT), 2025 WL

The Court concludes that 8 U.S.C. § 1226 and the Fifth Amendment entitle Mr. Duarte Escobar to a bond hearing. Accordingly, the Court will grant the Petition and Mr. Duarte Escobar's Motion for Summary Judgment. It will also deny Respondents' Motion for Summary Judgment.

### A.    Mr. Duarte Escobar Need Not Exhaust His Administrative Remedies

Perhaps unnecessarily given that Respondents do not argue otherwise and therefore concede the argument, the Court examines first whether Petitioner must exhaust administrative remedies prior to bringing this Amended Petition. He does not.

### 1.    Legal Standard:  Exhaustion of Administrative Remedies

Before properly bringing a § 2241 habeas petition in federal district court, a petitioner must exhaust his or her administrative remedies. *Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010) (stating that "[a]s a general rule, in the absence of exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent . . . courts require exhaustion of alternative remedies before a prisoner can seek federal habeas relief") (internal citation and quotation marks omitted). "[B]ecause exhaustion requirements for filing pursuant to § 2241 are judicially imposed, this Court has discretion to waive exhaustion in certain circumstances and proceed to the merits of petitioner's claim." *Myers v. Williams*, No. 2:15-cv-49, 2015 WL 9304550, at *4 (N.D.W. Va. Dec. 21, 2015).

For instance, a court may waive the exhaustion requirement when exhaustion would be futile. Indeed, "[t]he Supreme Court has instructed that one circumstance in which district courts

---

2932635 (E.D. Va. Oct. 14, 2025); *Hernandez v. Crawford*, No. 1:25-cv-01565, 2025 WL 2940702 (AJT) (E.D. Va. Oct. 16, 2025).

need not require exhaustion is when the administrative body has predetermined the issue before it." *Aguilar v. Lewis*, 50 F. Supp. 2d 539, 542 (E.D. Va. 1999) (citing *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992)).

**2.    Exhaustion of Mr. Duarte Escobar's Administrative Remedies Would Be Futile Because the BIA has Predetermined the Issue Before It**

Mr. Duarte Escobar correctly argues that he need not exhaust his administrative remedies because to do so would be futile. (ECF No. 16, at 8.) On September 5, 2025, the BIA issued a precedential decision in which it held that individuals detained subject to 8 U.S.C. § 1225(b)(2), like Mr. Duarte Escobar, are not entitled to a bond hearing. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The BIA has "predetermined the issue before it." *Aguilar*, 50 F. Supp. 2d at 542. As a result, any administrative appeal by Mr. Duarte Escobar seeking a bond hearing would be futile. Mr. Duarte Escobar need not exhaust his administrative remedies given the position taken by the Respondents here.[9] The absence of response to Petitioner's argument as to exhaustion only highlights the integrity of this finding.

**B.    The Court Has Jurisdiction Over the Petition Despite the Jurisdiction-Stripping Provisions of the INA Because those Provisions Do Not Apply Here**

Before turning to the heart of the applicability of §§ 1225 and 1226, the Court will address additional jurisdictional arguments brought by Respondents. Apart from having appropriate habeas jurisdiction, Respondents argue that the Court lacks subject-matter jurisdiction over the Petition because "[s]everal provisions in the INA preclude [Mr.] Duarte

---

[9] Numerous district courts around the country have come to the same conclusion regarding exhaustion of administrative remedies after the BIA decided *Hurtado*. *See, e.g., Giron Reyes v. Lyons*, —F. Supp. 3d—, 2025 WL 2712427, at *3 (N.D. Iowa 2025); *Inlago Tocagon v. Moniz*, —F. Supp. 3d—, 2025 WL 2778023, at *2 (D. Mass. 2025); *H.G.V.U. v. Smith*, No. 25-cv-10931, 2025 WL 2962610, at *3–4 (N.D. Ill. Oct. 20, 2025).

Escobar's claims." (ECF No. 18, at 7.) According to Respondents, two provisions of the INA

strip the Court of jurisdiction over the Petition: 8 U.S.C. § 1252(b)(9)[10] and 8 U.S.C.

§ 1252(g).[11] (ECF No. 18, at 7–8.) But Respondents' arguments fail because they ignore

substantive portions of the statutory provisions on which they rely. And a plurality of the

_____

[10] 8 U.S.C. § 1252(b)(9) provides:

> (b) Requirements for review of orders of removal
>
> With respect to review of an order of removal under subsection (a)(1), the following requirements apply:
>
> > (9) Consolidation of questions for judicial review
> >
> > Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

[11] 8 U.S.C. § 1252(g) provides:

> (g) Exclusive jurisdiction
>
> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Supreme Court has ruled that §§ 1252(b)(9) and 1252(g) of the INA apply only in limited circumstances, none of which are present here.

     **1.**    **8 U.S.C. § 1252(b)(9) Does Not Divest the Court of its Habeas Jurisdiction Because Petitioner Does Not Seek Review of a Removal Order**

First, Respondents' reliance on § 1252(b)(9) founders.  8 U.S.C. § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact . . . *arising from any action taken or proceeding brought to remove an alien* from the United States under this subchapter shall be available only in judicial review of a final order under this section." *Id.* (emphasis added).  By its own terms, this provision "applies only '[w]ith respect to review of an order of removal.'" *I.N.S. v. St. Cyr*, 533 U.S. 289, 313 (2001).  Respondents argue that Petitioner's claims "fall within this jurisdiction-stripping provision of the INA." (ECF No. 18, at 7.)

But Mr. Duarte Escobar seeks a bond hearing, not a review of a final order.  A request for a bond hearing is "separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding." 8 C.F.R. § 1003.19(d).  No removal order has been entered against Mr. Duarte Escobar, nor does his Petition otherwise address his potential removal.  As a result, 8 U.S.C. § 1252(b)(9) does not strip the Court of jurisdiction over the Petition.

The Supreme Court has provided guidance in line with this finding.  In *Jennings v. Rodriguez*, a plurality of the Supreme Court addressed arguments for interpreting § 1252(b)(9) to mean that any action taken in furtherance of deporting an alien, including detention, would "aris[e] from . . . action[s] taken . . . to remove an alien from the United States." 583 U.S. 281, 292–95 (2018) (plurality opinion) (quoting 8 U.S.C. § 1252(b)(9)).  The *Jennings* plurality rejected this "expansive interpretation" of § 1252(b)(9), observing that this interpretation "would lead to staggering results." *Id.* at 293.  If, for example, "a detained alien brings a state-law claim

for assault against a guard," the expansive interpretation of § 1252(b)(9) propounded would strip the courts of jurisdiction to hear that claim. *Id.*

This Court follows the reasoning of the *Jennings* plurality not just because of its precedential value, but also because to find otherwise would mean that "detention [would be] mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 2025 WL 2682255, at *8. Albeit of a different type, this Court considers that such a sweeping outcome amounts to a type of "staggering result" the *Jennings* plurality questioned. *Jennings*, 583 U.S. at 293.[12]

At bottom, § 1252(b)(9) "does not present a jurisdictional bar." *Jennings*, 583 U.S. at 281, 294–95 (concluding that § 1252(b)(9) "does not present a jurisdictional bar" when a petitioner does not "ask[] for review of an order of removal," does not "challeng[e] the decision to detain them in the first place or to seek removal," and does not "challeng[e] any part of the process by which their removability will be determined"). This Court is not required to send this challenge to an immigration court.

---

[12] Justices Thomas and Gorsuch concurred in *Jennings*, refusing to join only the plurality's findings regarding § 1252(b)(9). *Jennings*, 583 U.S. at 314–26 (Thomas, J., concurring). According to Justice Thomas, "[s]ection 1252(b)(9) is a 'general jurisdictional limitation' that applies to 'all claims arising from deportation proceedings" and the "many . . . decisions or actions that may be part of the deportation process.'" *Id.* at 317 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999)). Justice Thomas argued that "detention *is* an 'action taken . . . to remove' an alien." *Id.* at 318 (emphasis in original). This reading did not carry the day.

Moreover, Justice Thomas was also careful to note that *Jennings* did not involve a habeas petitioner. Rather, the plaintiffs in *Jennings* sought declaratory and injunctive relief, not habeas relief. *Id.* at 324. Justice Thomas' concurrence suggests that were § 1252(b)(9) to strip the courts of habeas jurisdiction, then the statute might violate the Suspension Clause of the Constitution. *Id.* at 323–26 (citing Art. I, § 9, cl. 2). The Court declines to read § 1252(b)(9) to strip the courts of their habeas jurisdiction in part out of respect for the canon of constitutional avoidance.

2. **8 U.S.C. § 1252(g) Does Not Divest the Court of its Habeas Jurisdiction Because this Case Does Not Involve the Commencement, Adjudication, or Execution of Any Immigration Matter**

As with § 1252(b)(9), Respondents ignore substantive portions of § 1252(g) fatal to their argument. 8 U.S.C. § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter*." *Id.* (emphasis added). Respondents persist in arguing that this provision of the INA precludes the Court from exercising jurisdiction over the Petition. (ECF No. 18, at 8.) Supreme Court precedent suggests otherwise.

As with § 1252(b)(9), § 1252(g) does not apply "to *all* claims arising from deportation proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis added). To the contrary, "[t]he provision applies only to three discrete actions that the Attorney General may take," namely the Attorney General's "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* (emphasis in original).

Petitioner challenges neither the decision to commence removal proceedings, the decision to adjudicate his case, nor the decision to execute a removal order. He seeks a bond hearing. Section 1252(g) therefore does not apply, and the Court has jurisdiction over the Petition. Again, this case need not be sent to an immigration court.

Because neither provision of the INA invoked by Respondents divests the Court of jurisdiction, the Court proceeds to the merits of the Petition.

## C.    Petitioner is Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226

Mr. Duarte Escobar is clearly entitled to a bond hearing under the INA. (ECF No. 16, at 10–11.) Whether Mr. Duarte Escobar can prevail on his *request* for a bond hearing depends on which statute governs his detention: the default discretionary detention provision of the INA, 8 U.S.C. § 1226, or the mandatory detention provision, 8 U.S.C. § 1225. According to Mr. Duarte Escobar, § 1226 governs his detention. (ECF No. 16, at 8–9.) According to Respondents, § 1225 governs his detention because he should be labeled as an "applicant for admission." (ECF No. 18, at 8–20.)

Petitioner is correct that § 1226 applies to this case. As the default rule for aliens already present in the United States, § 1226 entitles Petitioner to a bond hearing. Courts around the country have rejected Respondents' overbroad interpretation of § 1225. The Court agrees with those decisions that applying the discretionary detention provisions of § 1226 to Petitioner stems from (1) a plain reading of the statute; (2) Supreme Court precedent; and (3) numerous cases around the country (including five eminently reasonable cases in this District), reflecting concomitant decades of practice.

1.    **The Plain Text of the Discretionary Detention Provisions of 8 U.S.C.
§ 1226 Govern Petitioner's Detention Because his Presence in the
United States Does Not Mean he is "Seeking Admission"**

Respondents assert that Mr. Duarte Escobar is properly subject to mandatory detention

pursuant to 8 U.S.C. § 1225(b)(2)(A) because Petitioner falls within the plain terms of § 1225.

(ECF No. 18, at 8–20.) Section 1225(a) provides that "[a]n alien present in the United States

who has not been admitted or who arrives in the United States . . . shall be deemed for purposes

of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Section 1225 then divides

"applicants for admission" into two categories under § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(2) pertains to the Petition and the parties' motions. Section 1225(b)(2)

provides that if an immigration officer "determines that an alien *seeking admission* is not clearly

and beyond a doubt entitled to be admitted, the alien *shall* be detained." 8 U.S.C.

§ 1225(b)(2)(A) (emphasis added).

According to Respondents, Mr. Duarte Escobar is "[a]n alien present in the United States

who has not been admitted," meaning he is statutorily defined as "an applicant for admission."

(ECF No. 18, at 10 (emphasis omitted) ("The only requirements to be an applicant for admission,

then, are to be (1) present in the United States, and (2) have not been admitted.") (citing 8 U.S.C.

§ 1225(a)(1)).) Petitioner concedes that he is an "applicant for admission." (ECF No. 16, at 8

("Petitioner may satisfy the first requirement as an "applicant for admission[.]").) But there is

nothing "plain" about Respondents' interpretation of § 1225, which requires more before

immigration officials can engage in mandatory detention. The statute provides that an alien

"shall be detained" only if an immigration officer determines that the alien "*seeking admission* is

not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis

added). That is, before immigration officials impose mandatory detention, the relevant alien must be "seeking admission" to the United States.

Respondents contend that Petitioner is "seeking admission." (ECF No. 18, at 11–12.) Respondents distill their argument to the following: "By simply being in the United States without having been admitted, [Mr.] Duarte Escobar is in fact actively seeking admission into the country." (ECF No. 18, at 12.) Respondents' argument fails for several reasons. First, the plain text of the statute demonstrates that an alien "seeking admission" must do more than simply be present in the United States. Second, Respondents' interpretation of § 1225 would render provisions of § 1226 superfluous.

### a. The Plain Text of § 1225 Requires that an Alien Must Actively Seek Admission

Section 1225(b)(2) uses active language. An applicant for admission must be "seeking" admission for mandatory detention to apply. 8 U.S.C. § 1225(b)(2)(A). The statute's use of the present participle "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, No. 25-11613, — F. Supp. 3d —, 2025 WL 2084238, at *6 (D. Mass. 2025); *see also Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799, at *5 (E.D. Va. Sept. 29, 2025) ("[Section 1225(b)(2)(A)] brings within its scope only those individuals *actively* seeking admission into the country, and not those who have already entered the country." (emphasis added)).

Petitioner has not taken any active steps "seeking admission" into the United States. Respondents concede as much. (ECF No. 18, at 14 ("Respondents recognize that [Mr.] Duarte Escobar is not (in this action) seeking a U-visa or any waiver of inadmissibility.").) Despite Respondents' insistence that they merely seek to apply the "plain" language of the statute,

concluding that Mr. Duarte Escobar's mere presence in the United States constitutes "seeking admission" would *ignore* the plain language of § 1225(b)(2).

**b.    Respondents' Interpretation of § 1225 Would Render Other Statutory Provisions Superfluous**

"One of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,' and 'no part will be inoperative or superfluous, void or insignificant.'" *Hasan v. Crawford*, — F. Supp. 3d —, No. 1:25-cv-1408 (LMB), 2025 WL 2682255, at *8 (E.D. Va. 2025) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Accepting Respondents' interpretation of "seeking admission" and § 1225(b)(2) would render several provisions of the INA superfluous.

Respondents assert that "[b]y simply being in the United States without having been admitted," an alien "is in fact actively seeking admission into the country" and would therefore be subject to mandatory detention under § 1225(b)(2). (ECF No. 18, at 12.) It is unclear where the sweep of Respondents' interpretation of § 1225(b)(2) would end. For example, § 1226(c)(1)(A) provides that the Attorney General "shall take into custody any alien" who is inadmissible "by reason of having committed any offense covered in [8 U.S.C. § 1182(a)(2)]." 8 U.S.C. § 1226(c)(1)(A). But if the Court were to apply Respondents' interpretation of § 1225(b)(2), any such alien would "simply be[] in the United States without having been admitted," and § 1225(b)(2) would also govern their detention. In other words, Respondents' interpretation of § 1225(b)(2) would render the criminal prerequisites included in § 1226(c)(1)(A) meaningless.[13] *See Hasan*, 2025 WL 2682255, at *8 ("[M]andatory detention

---

[13] There is nothing on the record indicating that Petitioner has a criminal record that would subject him to mandatory detention under § 1226(c), nor do Respondents argue that Mr. Duarte Escobar is subject to mandatory detention under that provision. Respondents only argue that Petitioner is subject to mandatory detention under § 1225.

under § 1226(c) would be unnecessary if all persons who have not been admitted into the United States were already subject to § 1225(b)'s mandatory detention provisions."); *Quispe*, 2025 WL 2783799, at *5 (same); *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382 (MSN), 2025 WL 2783800, at *6 (E.D. Va. Sept. 30, 2025) (finding that respondents' identical arguments would render § 1226(c)(1)(E) superfluous).

Respondents counter that their "reading of § 1225(b)(2)(A) does not render 8 U.S.C. § 1226(c) superfluous." (ECF No. 18, at 15.) Respondents argue that "[s]ection 1226(c)(1) pertains to the mandatory detention of *criminal* aliens and is *not* limited to any subset." (ECF No. 18, at 15 (emphasis in original).) Respondents characterize § 1226(c) as having a broad sweep of its own. But even if Respondents' characterization were accurate, that would not change the equally broad sweep of their interpretation of § 1225(b)(2). If § 1225(b)(2) applies whenever an alien "simply [is] in the United States without having been admitted," then it would also apply to the "criminal aliens" covered by § 1226(c), rendering it superfluous.

Second, Respondents' argument that "§ 1225(b)(2)(A) governs because it contains specific mandatory language, as opposed to § 1226(a)'s general discretionary and permissive language," fares no better. (ECF No. 18, at 16 (some citations omitted).) Respondents aver that "'a general provision should not be applied when doing so would undermine limitations created by a more specific provision.'" (ECF No. 18, at 16 (quoting *In re Wright*, 826 F.3d 774, 779 (4th Cir. 2016)).) But as discussed above, applying the "more specific provision" of § 1225(b)(2) to Mr. Duarte Escobar by virtue of his mere presence in the United States would not just "undermine" the "general provision" of § 1226(c), but *obviate* it. The Court will not apply a canon of statutory construction that would render a statutory provision superfluous. For the same reason, the Court rejects Respondents' interpretation of § 1225(b)(2).

19

2.  **Supreme Court Precedent Supports Reading § 1225 to Apply Only to Aliens Actively Seeking Admission**

      a.  **The Supreme Court's Opinion in *Jennings* Demonstrates that § 1226 Governs Detention of Aliens Already in the United States, while § 1225 Governs Detention of Aliens Actively Seeking Admission**

The Supreme Court of the United States has provided additional guidance supporting this plain text interpretation of § 1225, as well as Petitioner's entitlement to a bond hearing under § 1226.[14] First, the Supreme Court explained that § 1226 "creates a default rule" for "aliens [such as petitioner] already present in the United States" by "permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings*, 583 U.S. at 303. Section 1226(a) grants the Attorney General additional discretion. This provision "permits the Attorney General to release [aliens such as petitioner already present

---

[14] 8 U.S.C. § 1226(a) provides:

(a) Arrest, detention, and release
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

    (1) may continue to detain the arrested alien; and

    (2) may release the alien on—

        (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

        (B) conditional parole; but

    (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a).

in the United States] on bond, '[e]xcept as provided in [8 U.S.C. § 1226(c)].'" *Jennings*, 583

U.S. at 303 (quoting § 1226(a)). Section 1226(c) establishes circumstances in which individuals

are subject to mandatory detention, in that it provides that "the Attorney General 'shall take into

custody any alien' who falls into one of the enumerated categories involving criminal offenses

and terrorist activities." *Jennings*, 583 U.S. at 303 (quoting § 1226(c)).

Section 1226(c) is the exception: "As long as the detained alien is not covered by

§ 1226(c), the Attorney General 'may release' the alien on 'bond . . . or conditional parole.'" *Id.*

at 306. And if an individual is detained subject to 1226(a), "[f]ederal regulations provide that

[these] aliens . . . receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306

(citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

To summarize the Supreme Court's interpretation of § 1226, aliens already present in the

United States are entitled to a bond hearing so long as they are detained subject to § 1226(a) and

do not fall into one of the mandatory detention categories outlined in § 1226(c).

Second, § 1226 stands in contrast to § 1225. The Supreme Court draws a clear

distinction between the two: "U.S. immigration law authorizes the Government to detain certain

aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the

Government to detain certain aliens already in the country pending the outcome of removal

proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. That is, § 1225 covers aliens

*seeking admission* to the United States, and § 1226 covers aliens *already present* in the United

States. *Jennings* supports a plain reading of § 1225, in that it demonstrates that § 1225 applies

only when an alien actively "seeks admission" to the United States.

**b.    Respondents' Attempts to Distinguish *Jennings* Fail**

Respondents suggest that the Supreme Court's ruling in *Jennings* does not apply here. According to Respondents, "the *Jennings* Court distinguished applicants for admission who are subject to mandatory detention pursuant to § 1225 with those who are 'within one or more . . . classes of deportable aliens' [under 8 U.S.C. § 1227] and thus fall under § 1226 detention." (ECF No. 18, at 17 (citing *Jennings*, 583 U.S. at 288 (emphasis omitted)).)  Respondents assert that "[Mr.] Duarte Escobar is not subject to the deportability grounds at 8 U.S.C. § 1227; he is charged with being inadmissible under 8 U.S.C. § 1182.  And because he is not charged with any § 1227 deportability grounds, he cannot be (and is not being) detained under § 1226." (ECF No. 18, at 17 (emphasis and some internal citations omitted).)  In other words, Respondents suggest that in order for an alien to be subject to discretionary detention, they must be charged with deportation under § 1227, and must not be charged with inadmissibility under § 1182.

Respondents' argument fails for three reasons.  First, the *Jennings* Court explained that "[s]ection 1226 generally governs the process of arresting and detaining" aliens subject to deportation under § 1227. *Jennings*, 583 U.S. at 288.  But that finding does not mean that § 1226 *only* governs aliens subject to deportation under § 1227.  The discretionary detention provisions of § 1226 do not distinguish between individuals charged as inadmissible under § 1182 versus those charged as deportable under § 1227.  And § 1226 provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained *pending a decision on whether the alien is to be removed*." 8 U.S.C. § 1226(a) (emphasis added).  That is, § 1226 governs detention even before an Immigration Judge has made a finding regarding the propriety of an alien's detention under any statute.

22

Second, § 1226(c) outlines circumstances in which an alien may be mandatorily detained, including circumstances covered by § 1182. *See, e.g.*, 8 U.S.C. § 1226(c)(1)(A) (providing for mandatory detention where an alien "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title"). The statute plainly contemplates that individuals charged as inadmissible under § 1182 are subject to detention under § 1226. And § 1226 contains no other limiting language suggesting that, in order for an alien to be subject to detention under § 1226, they must first be charged under § 1227. At bottom, § 1226(a) broadly covers individuals already in the United States and provides for discretionary detention, regardless of whether they were charged under § 1182 as inadmissible or under § 1227 as deportable. *See Quispe*, 2025 WL 2783799, at \*6 (rejecting Respondents' identical argument). Respondents do not point the Court to any other applicable legal authority supporting their position regarding § 1227.[15]

Third, *Jennings*' explanation of the interplay between §§ 1225 and 1226 provides clear guidance for the instant Petition. Respondents assert that "*Jennings* stated that the § 1226(a) default rule applied to '*certain* aliens already in the country,' not *all* aliens already in the country." (ECF No. 19, at 3 (citing *Jennings*, 583 U.S. at 289 (emphasis in original).) While it is true that the *Jennings* Court described § 1226 as applying to "certain aliens," the *Jennings*

---

[15] Respondents' citation to *Cruz-Miguel v. Holder*, 650 F.3d 189 (2d Cir. 2011), is inapposite. (ECF No. 18, at 17.) In that case, the United States Court of Appeals for the Second Circuit explained in a footnote that "[w]hether an alien has been admitted or is seeking admission is still a relevant distinction for purposes *of determining potential grounds for removal*. If the alien is seeking admission, he [or she] is charged in removal proceedings as an inadmissible alien *under 8 U.S.C. § 1182*. If the alien has been admitted, however, he [or she] is charged in removal proceedings as a deportable alien under *8 U.S.C. § 1227*." *Id.* at 197 n.13 (emphasis added). The Second Circuit correctly states the law regarding "potential grounds for removal." But Respondents do not explain why the distinction drawn by the Second Circuit has any bearing on whether the application of the discretionary *detention* provisions of § 1226 should vary depending on whether an alien is charged under § 1182 versus § 1227.

Court also did not cabin the reach of § 1226.[16]  Rather, the *Jennings* Court drew a clear

distinction between §§ 1225 and 1226: "U.S. immigration law authorizes the Government to

detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).  It also

authorizes the Government to detain certain aliens already in the country pending the outcome of

removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.  That is, § 1225

covers aliens seeking admission to the United States, and § 1226 covers aliens already present in

the United States.  As a result, § 1226 affords aliens already present in the United States an

opportunity for a bond hearing.

### 3. Caselaw and Decades of Practice Contravene Respondents' Interpretation of § 1225

Until recently, Immigration Judges regularly "conducted bond hearings for aliens who

entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225

n.6 (BIA 2025).  Only in its recent precedential decision in *Hurtado* did the BIA upend the

Supreme Court's traditional approach to §§ 1225(b)(2) and 1226(a).[17]  The Court does not find

the reasoning of *Hurtado* persuasive, and joins the many other district courts that have rejected

the BIA's broad application of § 1225(b)(2).  *See Hyppolite v. Noem*, No. 25-cv-4304, 2025 WL

2829511, at *12 (E.D.N.Y. Oct. 6, 2025) ("[I]n the approximately two and one-half-months since

Respondents began to broadly invoke § 1225(b)(2)(A) to justify the mandatory detention of

---

[16] Even if the Court were to accept Respondents' argument that the *Jennings* Court's use of the word "certain" cabins the reach of § 1226, the *Jennings* Court also stated that *§ 1225* applied to "certain aliens." *Jennings*, 583 U.S. at 289.  Yet Respondents nowhere suggest that the *Jennings* Court cabined the reach of § 1225.  To the contrary, Respondents maintain that § 1225 applies broadly.

[17] The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo*.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024).

noncitizens who already reside within the United States, well over a dozen federal courts around the country have rejected Respondents' novel and illogical interpretation of the INA.").[18] "It is clear that this Court is not alone in its rejection of *Hurtado*." *Soto*, 2025 WL 2976572, at *7.

None of the cases[19] cited by Respondents support a different outcome. Respondents cite the United States Court of Appeals for the Fourth Circuit's decision in *Lopez-Sorto v. Garland*, 103 F.4th 242 (4th Cir. 2024), where the Fourth Circuit "found that an alien cannot be, under immigration law, physically present in the United States without being admitted to the United States." (ECF No. 18, at 13 (citing *Lopez-Sorto*, 103 F.4th at 252).) That finding does not alter the Court's analysis. Petitioner does not address the propriety of his presence in the United States, but rather maintains he is entitled to a bond hearing while detained.

Respondents also point to the Fourth Circuit's decision in *Jimenez-Rodriguez v. Garland*, 996 F.3d 190 (4th Cir. 2021), where the Fourth Circuit explained that because the petitioner at issue "was never lawfully admitted [to the United States], he qualifie[d] as someone "seeking admission[.]" (ECF No. 18, at 13–14 (citing *Jimenez-Rodrigez*, 996 F.3d at 194 n.2).) *Jimenez-Rodriguez* is inapposite. In that case, the petitioner took active steps to "seek

---

[18] A small minority of district courts have accepted Respondents' arguments. *See, e.g.*, *Chavez v. Noem*, — F. Supp. 3d —, 2025 WL 2730228, at *4–5 (S.D. Cal. 2025); *Vargas Lopez v. Trump*, — F. Supp. 3d —, 2025 WL 2780351, at *7–10 (D. Neb. 2025). These decisions do not alter this Court's determination.

[19] Respondents attempt to distinguish the cases in which other courts in the Eastern District of Virginia have agreed that § 1226 governs Petitions like Mr. Duarte Escobar's. (ECF No. 18, at 14–16.) But those cases decided by other courts in the Eastern District of Virginia are directly on point. In fact, one of the few differences the Court can discern is that in those other cases, petitioners were detained after already having been released by ICE on their own recognizance. *See, e.g.*, *Hasan*, 2025 WL 2682255, at *1–2. That is, *unlike* Mr. Duarte Escobar, other petitioners had at least received an opportunity to leave ICE custody before their eventual detention. Mr. Duarte Escobar, in contrast, has *never* received an opportunity even for a bond hearing.

admission" to the United States, including applying for a U-visa and a waiver of inadmissibility. *Jimenez-Rodriguez*, 996 F.3d at 191–93. Petitioner, in contrast, has taken no such steps.

Ultimately, the Court "joins the broad consensus among Article III courts to date," *Hyppolite*, 2025 WL 2829511, at \*12, to conclude that § 1226 governs Mr. Duarte Escobar's detention, not § 1225(b)(2). Mr. Duarte Escobar is not "seeking admission" as that phrase is used in § 1225(b)(2), and is instead subject to the discretionary detention provisions of § 1226. And because § 1226 governs Petitioner's detention, he is entitled to a bond hearing. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

### D.    **Petitioner's Due Process Rights Have Been Violated**

Finally, Mr. Duarte Escobar argues that his "continued detention without a bond hearing . . . violates his rights under the Fifth Amendment's Due Process Clause. (ECF No. 16, at 11.) Petitioner is clearly correct. Both the INA and the Constitution afford Petitioner an opportunity to seek "the most elemental of liberty interests" and "be[] free from physical detention." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Respondents' suggestion that the Fifth Amendment does not govern Petitioner's due process rights cannot prevail. (ECF No. 18, at 20–23.) Nor can Respondents' argument that even if Petitioner is subject to the Fifth Amendment's Due Process Clause, his due process rights have not been violated by his detention without a bond hearing. (ECF No. 18, at 23–28.)

Petitioner is subject to the due process protections of the Fifth Amendment, and his detention without a bond hearing violates those protections.

### 1.    **The Fifth Amendment's Due Process Clause Applies to Petitioner**

As a threshold matter, Respondents contend that *only* the INA outlines the scope of Mr. Duarte Escobar's due process rights, rather than the Fifth Amendment's Due Process Clause.

(ECF No. 18, at 20–23.)  According to Respondents, "the due process rights for . . . applicants for admission are *only what the INA prescribes*."  (ECF No. 18, at 21 (emphasis added).)  Respondents also assert that the "INA prescribes" due process for Petitioner through § 1225(b)(2)'s requirements for mandatory detention.  (ECF No. 18, at 20–23.)

Even if the Court were willing to accept that Petitioner derives his due process rights from a statute alone (it is not), the proper statute would be § 1226, not § 1225.  As discussed above, the discretionary detention provisions of § 1226 govern Petitioner's detention, not the mandatory detention provisions of § 1225.  *All* of Respondents' arguments regarding Mr. Duarte Escobar's statutory due process rights focus on the rights provided by § 1225.  (ECF No. 18, at 20–23.)  For that reason alone, Respondents' due process arguments fail.

Moreover, Mr. Duarte Escobar is subject to the Fifth Amendment's due process protections.  As Petitioner explains, Respondents support their argument that "noncitizens do not enjoy Fifth Amendment due process rights" through citation to "cases involv[ing] noncitizens arriving at the border, rather than noncitizens like Petitioner who are already in the U.S."  (ECF No. 20, at 11.)  When immigration officials detain an alien already present in the United States subject to § 1226, as here, the Fifth Amendment plainly governs that alien's due process rights.  *See Hasan*, 2025 WL 2682255, at *9–13 (analyzing petitioner's due process claim under the Fifth Amendment when § 1226 governed that petitioner's detention); *Quispe*, 2025 WL 2783799, at *8–9 (same); *Quispe-Ardiles*, 2025 WL 2783800, at *9–10 (same).

The Court therefore analyzes Mr. Duarte Escobar's due process claim by applying the Fifth Amendment's Due Process Clause.

2.    **Legal Standard:  The Fifth Amendment's Due Process Clause**

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  "To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the familiar three-part test articulated in *Mathews v. Eldridge*." *Hasan*, 2025 WL 2682255, at *11 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). *Mathews* requires courts to weigh three factors:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and, (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335–36.

Petitioner more than satisfies the *Mathews* test.  Respondents fail to persuade the Court that they have a serious interest in denying Mr. Duarte Escobar a bond hearing that would override Petitioner's substantial interest in receiving such a hearing.  And Respondents ignore that there has *already been* a deprivation of Mr. Duarte Escobar's due process rights, because he has been deprived of his statutory and constitutional entitlement to a bond hearing to this date.

a.    *Mathews* **Factor One:  Petitioner's Private Interest in Remaining Free from Physical Detention Weighs in His Favor**

"The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  Respondents recognize as much. (ECF No. 18, at 24.)  Despite their concession, Respondents characterize Mr. Duarte Escobar as arguing that "aliens have a constitutional right to be released from custody during the pendency of removal proceedings."  (ECF No. 18, at 25.)  But Respondents mischaracterize Petitioner's

contention. Release is not the process that Petitioner argues is due. Mr. Duarte Escobar only asserts that "the government has violated his due process rights by subjecting him to mandatory detention during the course of his removal proceedings." (ECF No. 20, at 12.) And on that front, Petitioner is correct.

Respondents counter that even if Petitioner has a private interest in receiving a bond hearing, that interest is "diminished when release into the United States would be an assistance to an ongoing violation of United States law." (ECF No. 18, at 25.) Again, Respondents ignore what Petitioner actually seeks. As Petitioner argues, "'Respondents fail to recognize that releasing Petitioner on bond does not preclude the government from moving forward with its removal proceedings against Petitioner at the appropriate time.'" (ECF No. 20, at 12 (quoting *Quispe*, 2025 WL 2783799, at *8).) Respondents do not persuade that Mr. Duarte Escobar's "elemental" liberty interest is so diminished because of his illegal status that he cannot ever receive a bond hearing. The first *Mathews* factor weighs heavily in Mr. Duarte Escobar's favor. *See Hasan*, 2025 WL 2682255, at *9–11 (finding that automatic stay of immigration bond orders violated petitioner's due process rights under *Mathews* factor one); *Quispe*, 2025 WL 2783799, at *8 (same); *Quispe-Ardiles*, 2025 WL 2783800, at *9 (same).

        **b.**    **<u>*Mathews* Factor Two</u>:  <u>There is a Significant Risk of Erroneous Deprivation of Petitioner's Due Process Rights</u>**

Respondents next argue that Petitioner "has already received more process than he is due because his ability to seek parole exceeds the opportunity for release available to other aliens detained pursuant to 8 U.S.C. § 1226(c)," meaning there is no risk of erroneous deprivation of Petitioner's rights. (ECF No. 18, at 26.) This is incorrect. Mr. Duarte Escobar has not received even the *baseline* amount of process due to him regarding his detention status. As discussed above, because § 1226 governs his detention, Mr. Duarte Escobar is entitled to a bond hearing,

which he has not received. "[T]he second *Mathews* factor weighs heavily in Petitioner's favor, as he is presently and erroneously detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing." *Soto*, 2025 WL 2976572, at *8 (emphasis omitted); *see also Hasan*, 2025 WL 2682255, at *12 (finding that automatic stay of immigration bond orders violated petitioner's due process rights under *Mathews* factor two); *Quispe*, 2025 WL 2783799, at *8 (same); *Quispe-Ardiles*, 2025 WL 2783800, at *9 (same).

c. **<u>*Mathews* Factor Three:</u> Respondents Have Failed to Make a Sufficient Showing of a Compelling Government Interest in <u>Detaining Petitioner Without Holding a Bond Hearing</u>**

Finally, Respondents contend that "the government's interests in mandatory detention pursuant to § 1225(b) are legitimate and significant." (ECF No. 18, at 27.) To be sure, "Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest." *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022). "But Respondents do not explain why these interests would not be adequately protected by the individualized determination of an immigration judge as to whether an individual should be released on bond under section 1226(a) or their ability to have that release decision reviewed under the existing regulations." *Quispe*, 2025 WL 2783799, at *9. Moreover, if appropriate, bond can be denied in a hearing.

Respondents' assertion that there is "always a public interest in prompt execution of removal orders" fares no better. (ECF No. 18, at 27 (quotation omitted).) As discussed above, "Respondents fail to recognize that releasing Petitioner on bond, pursuant to [an] immigration judge's recommendation, does not preclude the government from moving forward with its removal proceedings against Petitioner at the appropriate time." *Quispe*, 2025 WL 2783799, at *8; *see also Hasan*, 2025 WL 2682255, at *12–13 (finding that automatic stay of immigration

bond orders violated petitioner's due process rights under *Mathews* factor three); *Quispe*, 2025 WL 2783799, at *9 (same); *Quispe-Ardiles*, 2025 WL 2783800, at *10 (same).

The third *Mathews* factor thus weighs in Petitioner's favor as well.  Because all three *Mathews* factors weigh in his favor, the Court must find that Petitioner's due process rights under the Fifth Amendment have been violated, meaning that he is entitled to a bond hearing

## IV. Conclusion

Respondents encourage the Court to ignore clear statutory text, binding precedent from the Supreme Court, five cases from within its own District, dozens of cases around the country, and decades of practice.  The Court declines that invitation.

For the reasons articulated above, the Court will grant Mr. Duarte Escobar's Petition, (ECF No. 9), and his Motion for Summary Judgment, (ECF No. 15).  The Court will deny Respondents' Motion for Summary Judgment.  (ECF No. 17.)

An appropriate Order shall issue.

Date: 10/27/25
Richmond, Virginia

M. Hannah Lauck
United States District Judge